*93 The opinion of the Court was delivered by
Mr. Justice Cheves.
nni , , 1st. The word “ heirs, m this bequest, as well from the peculiar penning of the clause, from the limitation over to the father of the testator, who, without such limitation, wouAd have been embraced by the word heirs, in its most extensive meaning, can only mean lineal heirs, and must be construed heirs of the body of the first takers, (Fearne on Ex. Dev. 4 Edit. 350; Webb vs. Herring, Cro. Ja. 415; Parker vs. Thacker, 3 Lev. 70;) and these words, heirs of the body, are clearly restrained by the word “ leaving,” (Fearne on Ex. Dev. 4 Edit. 191, and the cases there quoted;) to issue living at the death of the first takers. The case of Goodlisle on Dem. of Peake vs. Pagden, (2 Term Rep. 720,) is exactly in point. Our own decisions confirm the English authorities. The issue, then, must have taken as purchasers; and the immediate consequence of that is, that the son and daughter of the testator only took a life estate, (Hockley vs. Mawbay, 1 Ves. Jun. 148.) The limitation over to Middleton McDonald, the testator’s father, being to take effect at furthest on the failure of issue of the first takers, which in this case means issue living at their decease, was not too remote; and, therefore, on the death of the son and daughter without issue, unmarried, and under twenty-one years of age, the limitation to him took effect, unless defeated by some other cause than the remoteness of the limitation.
itisnotneoes.lt ca%‘,atcaiíedhna vested interest.
2d. But it was contended, that Middleton M'-Donald,, having been survived by one of his / ”... . grand-children, the limitation to him could not effect, as he died before the contingency happened; and this depends on the question, whether the limitation to him was a transmissible interest or not? Mr. Fearne, Speaking of executory devises, ;(and the limitation to Middleton M'-Donald is an executory bequest,) says, “ an executory interest, whether in real or personal estate, is transmissible to the representative of the devisee, when such devisee dies before the contingency happens. (Ex. Dev. 4 Edit. 444, 445.) It was argued, that it was not k vested interest; and that, therefore, it was not transmissible. It is, perhaps, not a vested interest in the technical sense of that word. It is frequently called a possibility only; but it is nevertheless vested in such manner as to be transmissible, and according to the late authorities, transmissible, by will. (Fearne on Ex. Dev. 4 Edit. 522, 523; Ca. Temp. Talbot, 123; King vs. Withers, Toml. 03.) is not necessary that an interest, to be trans-should be what is technically denominated a vested interest. Contingent interests, as •iir* , 7 . . . expressly distinguished from vested interests, are transmissible. Mr. Fearne says, (Cont. Rem. 4 Edit. 534.) “ a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chance to *95 ¿fie before the contingency happens ” It is only necessary that the person to take should be ascertained and certain, to malee such an interest transmissible, (Fearne on Cont. Rem. 4 Edit. 542 to 546.) The point.is very clear.
3d. It was next contended, that the limitation over to Middleton McDonald was to take effect only on the contingency of his surviving both his grand-children. It was argued, that as the word “ revert” is used in the clause of survivorship between the brother and sister, and also in the limitation over to Middleton McDonald, it ought in the limitation to him to be coupled with the event of his surviving both of them. But suéh a construction would carry us out of the words of the will, to put on a customary limitation — an unusual and unnecessary construction. The word revert, in both instances, was used without grammatical accuracy; and in both, obviously meant no more, than that, when the previous estates should determine, the property should go over.
4. Lastly, it was contended by the defendant, that the issue of the negroes bequeathed did not pass under the limitation to Middleton McDonald,. because the word “ increase,” which was used in the bequest to the first takers, was not repeated in the clause of limitation to him; and the case of Ellis vs. Shell, decided in the Court of Equity in this State, and a case from 2 Eg. Ca. Ab. 323, were relied upon. The first, was represented to- *96 be a case, (I have no other knowledge of this case, than the statement at the bar,) where the 7 . bequest was or two negroes, “ Cesar and baomai and their issue,” to the first taker, with a limitation over of “ the said Cesar and Sabina,” omitting the words, “ and their issue.” - Now in this case, though it may have been the intention of the testator to pass the future issue under the last limitation, that intention was not only not expressed, but, from the limited and precise nature of the words, “ Cesar and Sabina,” seemed to be negatived. In the case before us, the alleged omission does not exist. There is no omission, in this there is no reference to the negroes bequeathed, by any words expressive of personal identity. The words are, “ the said property.” What property ? The property immediately before described was, “ the negroes and their increaseand the increase are as much a part of “ the said property” as the negroes themselves: more expressive and sufficient words could hardly have been selected. The case from 2 ,Eq. Ca. is one in which it was determined that the “ produce” of an estate, which accrued before the estate vested in the ulterior legatee, should not pass to him. The produce was the previous annual income or interest which had accrued before he had a vested interest in the estate. To make the cases correspond, the claim in the case before us ought to be for the produce of the work and labour of the slaves be *97 fore the happening of the contingency which vested them in the plaintiffs. That is not the x # claim of the plaintiffs. It is for the issue of the bodies of the slaves, which, in general, is to be considered as identified with the parents. From x # the nature of this property, this principle is generaliy necessary to the perpetuation oí the property, particularly in cases like the present; for the'period allowed by the rules of law for these ulterior limitations extends twenty-one years and more, beyond lives in being; while if the issue were not taken to be included in the ■ parent, the duration of the property limited would only be commensurate with that of lives in being, and would in most cases necessarily perish before remote limitations could vest. On all the points of the case, I am clearly of opinion the motion ought to be refused.
"In sitTeTwith unStations over, the ,3> cs™; the Pa
Grimké, Colcock, and JYott, J. concurred.
Gantt, J. dissented.
Johnson, J. gave no opinion, having been concerned in the cause.